

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-28-2006

# Wijaya v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4738

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Wijaya v. Atty Gen USA" (2006). *2006 Decisions.* Paper 1536.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1536

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-4738
_____

FANNY WIJAYA,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A 95 377 020)
Immigration Judge Donald Vincent Ferlise

_____

Submitted Under Third Circuit LAR 34.1(a)
February 13, 2006

Before: SCIRICA, *Chief Judge*, BARRY and FISHER, *Circuit Judges*.

(Filed February 28, 2006 )

_____

OPINION OF THE COURT

_____

FISHER, *Circuit Judge*.

Fanny Wijaya, a native and citizen of Indonesia, petitions for review of an order of

the Board of Immigration Appeals, which affirmed the decision of an immigration judge

denying her application for asylum, withholding of removal, and protection under the Convention Against Torture.[1]  We have jurisdiction under 8 U.S.C. § 1252 and will deny the petition.

## I.

Removal proceedings were commenced against Wijaya in 2002, after she failed to depart the United States within the time required by her visa.  She conceded removability but sought asylum and withholding of removal on the ground that, as an ethnic Chinese and a Christian, she would be persecuted and tortured if she returned to Indonesia.  A hearing on the application for relief was held in August 2003.

Testimony and documents introduced at the hearing showed that Chinese Christians in Indonesia suffer intimidation and assaults by Indonesian nationals.  News articles from 1998 and 1999 recount incidents in which ethnic Chinese were attacked, and a 2002 country report confirms "instances of discrimination and harassment."  Wijaya testified to three such incidents:  in 1996, a neighbor had thrown stones and excrement at her family's home to protest their presence in the area; in 1999, while on a bus, she had been assaulted by a group of Indonesian males who touched her legs, ripped her shirt, and threatened her with rape; and, in 2000, while accompanying her mother to a Buddhist temple, she had again been assaulted by a group of Indonesian males who

---

[1]Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), art. 3, *opened for signature* Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force June 26, 1987).

threw stones at her, pulled her hair, ripped her shirt, and threatened her with rape. None of these attacks resulted in serious physical injury. She did not report any of the incidents to police because she believed that it would be futile to do so, based on the advice of friends who had experienced similar assaults.

The immigration judge denied relief. Although he found Wijaya to be credible, he concluded that the attacks against her were not condoned by the government but were attributable to "street crime and . . . prejudices exhibited . . . by ignorant people." Without evidence of official involvement, Wijaya could establish neither "persecution" nor "torture," as required to support her claims for asylum and withholding of removal. The Board of Immigration Appeals subsequently affirmed without opinion.[2]

## II.

Asylum, withholding of removal, and protection under the Convention Against Torture are available only to aliens who demonstrate a reasonable fear of "persecution" or "torture" in their native country. 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1); 8 C.F.R. §§ 208.16(c)(2), 208.18(a). These concepts encompass not all acts of violence against individuals, but only those that are somehow sanctioned by public officials. *Amanfi v.*

---

[2]Where the Board affirms without opinion, we review the immigration judge's decision. *Partyka v. Attorney General*, 417 F.3d 408, 411 (3d Cir. 2005). Factual findings of the immigration judge, including whether or not an alien has suffered "persecution," will be overturned only if not supported by "substantial evidence." *Abdille v. Ashcroft*, 242 F.3d 477, 483-84 (3d Cir. 2001) ("Under the substantial evidence standard, . . . [a] finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it.").

3

*Ashcroft*, 328 F.3d 719, 726 (3d Cir. 2003); *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002). The offending conduct must be "committed by the government or [by] forces the government is either 'unable or unwilling' to control." *Gao*, 299 F.3d at 272 (quoting *Navas v. INS*, 217 F.3d 646, 655 (9th Cir. 2000)); *see also Amanfi*, 328 F.3d at 726.

The requisite involvement or acquiescence of public officials is absent in this case. The incidents described by Wijaya were perpetrated by private Indonesian citizens, with no apparent government association. Neither the police nor any other agency was informed of the assaults or had an opportunity to remedy the situation. And nothing in the record, including the 1998 and 1999 newspaper accounts and the 2002 country report, demonstrates conclusively that such abuses are so pervasive in Indonesia that officials may be presumed to approve of them. (*See, e.g.*, A.R. 120 (2002 country report) (noting that the Indonesian government "officially promotes racial and ethnic tolerance" and that officials have intervened in several cases to protect the rights of ethnic Chinese); A.R. 141 (2002 country report) (stating that Catholicism is one of five recognized religions in Indonesia and that, although "[c]hurches continued to come under attack[,] . . . such incidents were much less frequent than in previous years").)[3]

---

[3]*Cf. Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005) (holding, based on 1999 country report, that "attacks on Chinese Christians in Indonesia . . . do[] not appear to be sufficiently widespread as to constitute a pattern or practice"), *cited in Sukwanputra v. Gonzales*, 434 F.3d 627, 637 n.10 (3d Cir. 2006).

Substantial evidence supports the immigration judge's determination that Wijaya did not show "that the Indonesian government is unable or unwilling to protect ethnic Chinese [Christians] from harm." She is therefore unable to prove that she has suffered, or may suffer, "persecution" or "torture" in Indonesia. *See Amanfi*, 328 F.3d at 726; *Gao*, 299 F.3d at 272.

## III.

The application for asylum, withholding of removal, and protection under the Convention Against Torture was properly denied based on Wijaya's failure to establish a reasonable threat of persecution or torture. Accordingly, the petition for review will be denied.